UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSE LUIS SOLORZANO,                )     1:08-cv-01949 MJS HC
                                    )
                Petitioner,         )     ORDER DENYING PETITION FOR WRIT
                                    )     OF HABEAS CORPUS AND DECLINING
        v.                          )     TO ISSUE CERTIFICATE OF
                                    )     APPEALABILITY
                                    )
LARRY SMALL, Warden,                )
                                    )
                Respondent.         )
_____     )

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Larry Small, as warden of Calipatria State Prison is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 4, 21.)

I.    **PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on August 26, 2003, of four counts of second degree robbery. (CT[1], Vol. 2 at 352-53.) The trial court also found true various enhancements and sentenced Petitioner

_____

[1]"CT" refers to the Clerk's Transcript on Appeal lodged by Respondent with his response.

to serve four consecutive terms of twenty-five years to life, plus six years and eight months, in state prison. (Id.)

On December 14, 2004, Petitioner filed a habeas petition in the Kern County Superior Court, which was denied on February 7, 2005, as Petitioner's direct appeal was still pending. (LD[2] 5.)

On February 14, 2005, on direct appeal, the California Court of Appeal reversed the judgment because the trial court had refused to hear Petitioner's motion to substitute counsel based on assertions that appointed counsel was rendering effective assistance at the mental competence hearing. (LD 6, 12 at 2.)

On remand in the superior court, following a finding of mental competence, Petitioner was re-tried and again found guilty. (LD 12 at 2.) On February 16, 2006, the court sentenced Petitioner to four consecutive terms of twenty-five years to life, plus a determinate term of twenty-three years. (LD 7, at 311-12.)

On July 27, 2007, the California Court of Appeal struck a personal knife use enhancement and ordered the matter remanded with directions to the trial court to exercise its sentencing discretion solely as to the prison term prior. (LD 12, at 17-21.) In all other respects, it affirmed the judgment. (Id.) The California Supreme Court denied Petitioner's Petition for Review on October 31, 2007. (LD 13.)

Petitioner filed the instant federal habeas petition on December 8, 2008. (Pet., ECF No. 7.) Petitioner raises the following fourteen claims for relief:

1.) Failure to grant Petitioner's motion to suppress as the officer conducting the search did not have knowledge of the parole search agreement;

2.) The denial of the motion for a pretrial lineup was an abuse of discretion of the trial court;

3.) California Criminal Jury Instruction (CALCRIM) No. 376 erroneously eliminated the corroboration requirement for the inference of guilt based on possession of recently

---

[2]"LD" refers to the documents lodged by Respondent with his response.

1    stolen property.

2    4.) California Criminal Jury Instruction (CALCRIM) No. 318 erroneously permits the jury

3    to consider prior statements of a witness as substantive evidence;

4    5.) The imposition of a greater sentence after a successful appeal was a impermissible

5    vindictive sentence;

6    6.) California Criminal Jury Instruction (CALCRIM) No. 376 undermined the

7    presumption of innocence;

8    7.) California Criminal Jury Instruction (CALCRIM) No. 376 violates due process as it

9    is not supported by substantial evidence;

10   8.) The weapon use enhancement was imposed in violation of the double jeopardy

11   clause;

12   9.) The court erred in failing to grant Petitioner's *Marsden* motion;

13   10.)  Ineffective assistance of trial counsel;

14   11.) The court impermissibly applied prior strikes against Petitioner;

15   12.) Juror misconduct as one of the jurors talked to a witness and one juror went to

16   school with witness;

17   13.) The videotape used in evidence was modified; and

18   14.) A jury member was asleep, and another juror saw Petitioner with handcuffs on.

19   (Pet.)

20   Respondent filed an answer to the petition on July 1, 2009, and Petitioner filed a

21   traverse on August 2, 2010. (Answer & Traverse, ECF Nos. 35, 57.)

22   **II.    EXHAUSTION OF CLAIMS**

23   Respondent asserts that Petitioner has not properly presented claims 9 through 14 to

24   the California Supreme Court, and therefore the claims are not properly exhausted.

25   Exhaustion of state remedies is a "threshold barrier" that should be determined prior to

26   adjudication of claims on the merits. Day v. McDonough, 547 U.S. 198, 205 (2006); see, e.g.

27   Wagner v. Smith, 581 F.3d 410, 415 (6th Cir. 2009).

28   A petitioner who is in state custody and wishes to collaterally challenge his conviction

1  by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. §

2  2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state

3  court the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman

4  v. Thompson, 501 U.S. 722, 731 (1991);  Rose v. Lundy, 455 U.S. 509, 518 (1982).

5       A petitioner can satisfy the exhaustion requirement by providing the highest state court

6  with a full and fair opportunity to consider each claim before presenting it to the federal court.

7  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971);

8  Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). Additionally, the petitioner must have

9  specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513

10  U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), amended, 247 F.3d 904

11  (2001). In Duncan, the United States Supreme Court reiterated the rule as follows:

12           In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that
    exhaustion of state remedies requires that petitioners "fairly presen[t]" federal
13    claims to the state courts in order to give the State the "'opportunity to pass
    upon and correct alleged violations of the prisoners' federal rights" (some
14    internal quotation marks omitted). If state courts are to be given the opportunity
    to correct alleged violations of prisoners' federal rights, they must surely be
15    alerted to the fact that the prisoners are asserting claims under the United
    States Constitution. If a habeas petitioner wishes to claim that an evidentiary
16    ruling at a state court trial denied him the due process of law guaranteed by the
    Fourteenth Amendment, he must say so, not only in federal court, but in state
17    court.

18  Duncan, 513 U.S. at 365-366.

19       The Ninth Circuit examined the rule further, stating:

20           Our rule is that a state prisoner has not "fairly presented" (and thus
    exhausted) his federal claims in state court unless he specifically indicated to
21    that court that those claims were based on federal law. See Shumway v. Payne,
    223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in
22    Duncan, this court has held that the petitioner must make the federal basis of
    the claim explicit either by citing federal law or the decisions of federal courts,
23    even if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d 882, 889
    (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the
24    underlying claim would be decided under state law on the same considerations
    that would control resolution of the claim on federal grounds. Hiivala v. Wood,
25    195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31
    (9th Cir. 1996); . . . .

26
27           In Johnson, we explained that the petitioner must alert the state court to
    the fact that the relevant claim is a federal one without regard to how similar the
28    state and federal standards for reviewing the claim may be or how obvious the
    violation of federal law is.

1   Lyons, 232 F.3d at 668-669 (italics added).

2       As stated above, Petitioner raises fourteen claims for relief. Respondent claims that

3   Petitioner only presented his first eight claims to the California Supreme Court for review.

4       Petitioner admits in his traverse that he has not exhausted claims 9 through 14.[3]

5   (Traverse at 6.) Petitioner requests that the Court stay the Petition to allow him to return to

6   state court to exhaust his remedies with respect to the outstanding claims. The Court has

7   already twice denied Petitioner's requests to stay the petition. (Orders, ECF No. 40, 60.) While

8   the Court has denied Petitioner's requests to stay, the present Petition has been pending for

9   over three years. At any point during that time Petitioner could have attempted to litigate the

10  unexhausted claims in state court. He did not do so.

11      Furthermore, granting a stay under Kelly v. Small, 315 F.3d 1063 (9th Cir. 2002), would

12  have been futile.[4] The statute of limitations for filing Petitioner's federal petition for writ of

13  habeas corpus expired on January 29, 2009, the day before the Court received Petitioner's

14  motion to stay the petition. Accordingly, even if a stay under Kelly was granted, and

15  Petitioner's unexhausted claims were dismissed from the federal petition for later amendment,

16  the claims would have been untimely.

17      The Court shall not entertain Petitioner's requests in his traverse to stay the petition,

18  however, Petitioner also requests that if a stay is not granted, that the claims be dismissed

19  without prejudice. (Traverse at 6.) "The petitioner can always amend the petition to delete the

20  unexhausted claims, rather than returning to state court to exhaust all of his claims." King v.

21  Ryan, 564 F.3d 1133, 1141 (9th Cir. 2009) (citing Rose v. Lundy, 455 U.S. 509 at 520

22  (1982)).

23      Although Petitioner would not likely be able to exhaust his claims and present them in

24  _____

25      [3]Elsewhere in his traverse, Petitioner asserts that he has not exhausted claims 8 through 14, rather than
    claims 9 through 14. The assertion that claim 8 was not exhausted appears to be a typographical error.
26  Regardless, as discussed in Section III, infra, Petitioner admits that claim eight lacks merit and should be
    dismissed.
27

28      [4]Petitioner did not provide good cause to be entitled a stay under Rhines v. Weber, 544 U.S. 269, (2005).
    (See ECF No. 40.)

1  federal court in a timely manner, the Court shall grant Petitioner's request to dismiss the claims

2  without prejudice. While Petitioner is not likely capable of relying on statutory tolling with

3  regard to his unexhausted claims, upon exhausting the claims and presenting them again in

4  federal court, he may attempt to assert timeliness based upon equitable tolling grounds. The

5  Court refrains from making a prospective determination of the success of such claims.

6    Accordingly, the Court shall grant Petitioner's request to dismiss claims 9 through 14

7  without prejudice.

8  **III.    CLAIMS ABANDONED BY PETITIONER**

9    Petitioner, in his traverse, concedes that claims five and eight lack merit and should be

10 dismissed.[5] The Court shall grant the request. Accordingly, the Court shall review the

11 remaining claims, specifically claims 1 through 4 and claims 6 and 7 on the merits below.

12 **IV.    DISCUSSION**

13   **A.    Jurisdiction**

14   Relief by way of a petition for writ of habeas corpus extends to a person in custody

15 pursuant to the judgment of a state court if the custody is in violation of the Constitution or

16 laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams

17 v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his

18 rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises

19 out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28

20 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

21   **B.    Legal Standard of Review**

22   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

23 of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

24 enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484,

25 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus,

26

27

28  [5]It is clear that Petitioner referred to the subheadings of Respondent's answer rather than the actual numbering of claims in his petition. Petitioner states that claims 4 and 5 should be dismissed, but he refers to the substance of claims 5 and 8. To effectuate the intent of Petitioner, the Court shall dismiss claims 5 and 8.

1  it is governed by its provisions.

2        Under AEDPA, an application for a writ of habeas corpus by a person in custody under

3  a judgment of a state court may be granted only for violations of the Constitution or laws of the

4  United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal

5  habeas corpus relief is available for any claim decided on the merits in state court proceedings

6  if the state court's adjudication of the claim:

7
        (1) resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established federal law, as
8
        determined by the Supreme Court of the United States; or

9
        (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
10
        State court proceeding.

11  28 U.S.C. § 2254(d).

12              1.    <u>Contrary to or an Unreasonable Application of Federal Law</u>

13        A state court decision is "contrary to" federal law if it "applies a rule that contradicts

14  governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

15  materially indistinguishable from" a Supreme Court case, yet reaches a different result."

16  Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA

17  does not require state and federal courts to wait for some nearly identical factual pattern

18  before a legal rule must be applied. . . . The statue recognizes . . . that even a general

19  standard may be applied in an unreasonable manner"  Panetti v. Quarterman, 551 U.S. 930,

20  953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law"

21  requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v.

22  Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application

23  of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions

24  must provide a governing legal principle (or principles) to the issue before the state court.

25  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an

26  "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76,

27  quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In

28  Harrington v. Richter, the Court further stresses that "an unreasonable application of federal

1   law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing

2   Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim

3   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

4   correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S.

5   653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading

6   outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010).

7   "It is not an unreasonable application of clearly established Federal law for a state court to

8   decline to apply a specific legal rule that has not been squarely established by this Court."

9   Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419 (2009), quoted by Richter,

10  131 S. Ct. at 786.

11              2.      Review of State Decisions

12              "Where there has been one reasoned state judgment rejecting a federal claim, later

13  unexplained orders upholding that judgment or rejecting the claim rest on the same grounds."

14  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through"

15  presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006).

16  Determining whether a state court's decision resulted from an unreasonable legal or factual

17  conclusion,"does not require that there be an opinion from the state court explaining the state

18  court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is

19  unaccompanied by an explanation, the habeas petitioner's burden still must be met by

20  showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now

21  holds and reconfirms that § 2254(d) does not require a state court to give reasons before its

22  decision can be deemed to have been 'adjudicated on the merits.'").

23              Richter instructs that whether the state court decision is reasoned and explained, or

24  merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is

25  the same: "Under § 2254(d), a habeas court must determine what arguments or theories

26  supported or, as here, could have supported, the state court's decision; then it must ask

27  whether it is possible fairminded jurists could disagree that those arguments or theories are

28  inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong

case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3.   Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

## V.   REVIEW OF PETITION

### A.   Claim One - Search of Petitioner was Unlawful

Petitioner asserts that the state court erred in denying his motion to supress the

1  evidence obtained in the search. Specifically, Petitioner contends that the officer conducting

2  the search did not have actual knowledge of Petitioner's parole search agreement. The claims

3  were presented on direct appeal to the Fifth District Court of Appeal. (LD 6.) The appellate

4  court denied the claim in a reasoned decision, stating:

5          Focusing on the prosecution's lack of proof of the existence of, and the
       searching officer's awareness of, a signed parole search agreement, Solórzano
6       challenges the denial of his motion to suppress the evidence seized from a
       warrantless search of his person and his residence. The Attorney General
7       argues that the ruling was proper.

8          Before his first trial, Solórzano filed a motion to suppress arguing that the
       sole basis of his search was rank speculation, not reasonable suspicion. He
9       noted that the police seized cash from his person and a shaving kit from his
       residence bearing moisture from which the police inferred he had just shaved
10      to change his appearance. The prosecutor filed an opposition arguing that
       Solórzano was on parole and that totality-of-the-circumstances analysis showed
11      reasonable suspicion for the warrantless search.

12         At the hearing on the motion, counsel stipulated that the search was
       warrantless and that Solórzano was on parole at the time. One of the two
13      witnesses at the hearing, a police officer, testified that he heard a report of a
       store robbery perpetrated by a 40-something, pierced-lip Hispanic male five-two
14      to five-five in height wearing a baseball cap, bandanna, and sunglasses and
       driving a pickup truck with primer spots, that he recalled a string of four to six
15      armed robberies of stores a few years ago by a similar suspect with a similar
       modus operandi, and that after his request for additional information Solórzano's
16      name came up as "attached" to one of those robberies.

17         From his knowledge of the prior robberies, the officer drove to, and then
       circled, the immediate area of Solórzano's residence, learned his address,
18      out-of-custody status, and subject-to-search status from his parole agent, and
       saw parked near his residence a vehicle similar to the one involved in the latest
19      robbery. On the basis of the descriptions of the suspect and the vehicle, the
       officer thought Solórzano, with whom he made contact outside the residence,
20      was responsible for the robberies. The other witness at the hearing, a parole
       officer, testified that Solórzano was on parole subject to search of his person,
21      his vehicle, and his residence. The court (Hon. John L. Fielder) denied the
       motion. Before his second trial, Solórzano renewed, the prosecutor opposed,
22      and the court (Hon. James Stuart) denied the motion after the parties stipulated
       to the transcript of the hearing before the first trial as the factual basis.

23
          On review of a denial of a motion to suppress, an appellate court defers
24      to the findings of fact, express or implied, that have the support of substantial
       evidence but nonetheless independently determines, and applies to those
25      findings of fact, the relevant legal principles so as to determine whether the
       search was constitutionally reasonable. (People v. Weaver (2001) 26 Cal.4th
26      876, 924 [111 Cal. Rptr. 2d 2, 29 P.3d 103].) A ruling on a motion to suppress
       generally implies "a finding of fact favorable to the prevailing party on each
27      ground or theory underlying the motion." (People v. Manning (1973) 33 Cal. App.
       3d 586, 601–602 [109 Cal. Rptr. 531].) If facts not in dispute establish that the
28      search or seizure at issue was not constitutionally reasonable as a matter of law,

however, an appellate court is not bound by the ruling. (<u>People v. Medina</u> (1972) 26 Cal. App. 3d 809, 815 [103 Cal. Rptr. 337].)

Solórzano focuses his challenge to the court's ruling on the prosecution's lack of proof of the existence of, and the searching officer's awareness of, a signed parole search agreement. In reliance on section 3067,(fn.4) which took effect a decade ago, he argues that "the authority to search a parolee derives from a written search agreement that the parolee signs when released on parole." (Stats. 1996, ch. 868, § 2, p. 4656.) With commendable candor, he acknowledges that <u>People v. Middleton</u> (2005) 131 Cal.App.4th 732 [31 Cal. Rptr. 3d 813] (<u>Middleton</u>) rejected a similar argument.

Footnote 4: Section 3067: "(a) Any inmate who is eligible for release on parole pursuant to this chapter shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause. [¶] (b) Any inmate who does not comply with the provision of subdivision (a) shall lose worktime credit earned pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 on a day-for-day basis and shall not be released until he or she either complies with the provision of subdivision (a) or has no remaining worktime credit, whichever occurs earlier. [¶] (c) This section shall only apply to an inmate who is eligible for release on parole for an offense committed on or after January 1, 1997. [¶] (d) It is not the intent of the Legislature to authorize law enforcement officers to conduct searches for the sole purpose of harassment. [¶] (e) This section does not affect the power of the Director of Corrections to prescribe and amend rules and regulations pursuant to Section 5058."

Congruently, the United States Supreme Court last year affirmed a Court of Appeal judgment that, under the doctrine of stare decisis (<u>Auto Equity Sales, Inc. v. Superior Court</u> (1962) 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937] (<u>Auto Equity</u>)), upheld a "suspicionless" but neither "arbitrary, capricious, [n]or harassing" search condition in reliance on <u>People v. Reyes</u> (1998) 19 Cal.4th 743 [80 Cal. Rptr. 2d 734, 968 P.2d 445] (<u>Reyes</u>), in which the California Supreme Court held that "even in the absence of particularized suspicion, a search conducted under the auspices of a properly imposed parole search condition does not intrude on any expectation of privacy 'society is "prepared to recognize as legitimate"'" (id. at p. 754). (<u>Samson v. California</u> (2006) 547 U.S. 843, 846–848 [165 L. Ed. 2d 250, 255–256, 126 S. Ct. 2193].) The high court emphasized the state's "'overwhelming interest' in supervising parolees" and carefully noted that the California Supreme Court has not yet construed section 3067 but nonetheless expressly declined to rely on the "consent rationale" of that statute. (<u>Samson</u>, supra, 547 U.S. at pp. 851–854 & fn. 3 [165 L. Ed. 2d at pp. 258–260 & fn. 3, 126 S. Ct. at pp. 2199–2200 & fn. 3], citing <u>Middleton</u>, supra, 131 Cal.App.4th at pp. 739–740.)

<u>Middleton</u>'s rejection of an argument similar to Solórzano's arose from a line of California Supreme Court cases—all decided before section 3067 took effect—holding that "'a warrantless search condition is a reasonable term in any parole of a convicted felon from state prison'" (<u>Middleton</u>, supra, 131 Cal.App.4th at p. 739, quoting <u>People v. Burgener</u> (1986) 41 Cal.3d 505, 532 [224 Cal. Rptr. 112, 714 P.2d 1251], disapproved on another ground in <u>Reyes</u>,

supra, 19 Cal.4th at p. 756) and that "'every grant of parole included an implied search condition, and an officer's knowledge of parole status was equivalent to knowledge of a parole search condition' " (Middleton, supra, at p. 739, quoting In re Tyrell J. (1994) 8 Cal.4th 68, 94 [32 Cal. Rptr. 2d 33, 876 P.2d 519] (dis. opn. of Kennard, J.), overruled on another ground in In re Jaime P. (2006) 40 Cal.4th 128, 130 [51 Cal. Rptr. 3d 430, 146 P.3d 965]; see People v. Sanders (2003) 31 Cal.4th 318, 328–335 [2 Cal. Rptr. 3d 630, 73 P.3d 496]).

"The Court of Appeal must follow, and has no authority to overrule, the decisions of [the California Supreme Court]." (People v. Birks (1998) 19 Cal.4th 108, 116, fn. 6 [77 Cal. Rptr. 2d 848, 960 P.2d 1073], citing Auto Equity, supra, 57 Cal.2d at p. 455.) By the applicable standard of review, we determine that section 3067 does not abrogate the rule in force before the statute took effect and that Solórzano's challenge to the denial of his motion to suppress is meritless. (See Middleton, supra, 131 Cal.App.4th at p. 740.)

People v. Solorzano, 153 Cal. App. 4th 1026, 1030-1033 (2007).

Petitioner then filed for review with the California Supreme Court. Both petitions were summarily denied. (LD 13.) The California Supreme Court is presumed to have denied the claim for the same reasons stated in the courts below. Ylst, 501 U.S. at 803.

Respondent asserts that based on Petitioner's full and fair opportunity to litigate his Fourth Amendment claim in state court, this Court should deny his federal habeas petition. For the reasons set forth below, the Court agrees with Respondent's assertion.

It is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unreasonable search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). Stone is a "categorical limitation on the applicability of fourth amendment exclusionary rules in habeas corpus proceedings." Woolery v. Arave, 8 F.3d 1325, 1328 (9th Cir. 1993). If a petitioner fails to show that the state court did not offer him a full and fair opportunity to litigate his fourth amendment claim, it "must be dismissed." Id.

In determining whether Stone bars a petitioner's Fourth Amendment claims, the relevant inquiry is whether a petitioner had the opportunity to litigate his claims, not whether he did, in fact, do so, or whether the claims were correctly decided. See, e.g., Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) ("Whether or not [the petitioner] did in fact litigate this fourth amendment claim in state

1   court, he did have the opportunity to do so"). The extent to which the claim was briefed before

2   and addressed by the state trial and appellate courts also may be considered in assessing the

3   fullness and fairness of the opportunity which was provided to litigate the relevant claim. See

4   Terrovona v. Kincheloe, 912 F.2d 1176, 1178-79 (9th Cir. 1990); see also Moormann v.

5   Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005).

6          The policy behind the Stone Court's analysis is that the exclusionary rule is applied to

7   stop future unconstitutional conduct of law enforcement. Stone, 428 U.S. at 492. However,

8   excluding evidence that is not untrustworthy creates a windfall to the defendant at a

9   substantial societal cost. See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28. Thus,

10  the Ninth Circuit has described the rationale for this rule by saying:

11              The holding is grounded in the Court's conclusion that in cases where a
                petitioner's Fourth Amendment claim has been adequately litigated in state
12              court, enforcing the exclusionary rule through writs of habeas corpus would not
                further the deterrent and educative purposes of the rule to an extent sufficient
13              to counter the negative effect such a policy would have on the interests of
                judicial efficiency, comity and federalism.
14
15  Woolery, 8 F.3d at 1326; see also Stone, 428 U.S. at 493-494.

16         Here, as described by the appellate court, Petitioner briefed and argued his Section

17  1538.5 suppression motion at trial.  The trial court gave full consideration to the motion and

18  stated on the record its reasons for denying the motion. He presented the issue to the

19  California Court of Appeal, which issued a reasoned denial of the claim, and the California

20  Supreme Court affirmed the Court of Appeal upon review. Although the state courts ruled

21  against Petitioner, the record reflects that petitioner was afforded a full and fair opportunity to

22  litigate his Fourth Amendment claims. Accordingly, the claims are not cognizable on federal

23  habeas review. See Stone, 428 U.S. at 481-82. Petitioner's first claim for habeas corpus relief

24  lacks merit and must be denied.

            **B.     Claim Two - Denial of Motion for Pretrial Lineup**

25         Petitioner claims that it was an abuse of discretion for the trial court to deny his motions

26  for a physical pretrial lineup as his identification was in question. The claim was presented on

27  direct appeal to the Fifth District Court of Appeal. (LD 6.) The appellate court denied the claim

28

1    in a reasoned decision, stating:

2                                    2. Pretrial Lineup

3         Solorzano challenges the denial of his motions for a pretrial physical
     lineup as an abuse of discretion and a violation of due process. The Attorney
4    General argues that the denial of him motions was a proper exercise of the
     court's discretion.

5
          Before his first trial, Solorzano filed two motions, one on December 17,
6    2002, the other on January 2, 2003, to continue the preliminary hearing on the
     ground, inter alia, that he needed additional time to bring a motion to compel a
7    physical lineup. With no opposition by the prosecutor, the court granted the first
     motion and set a hearing date on the motion to compel. The prosecutor opposed
8    the second motion, in which Solorzano's attorney requested a continuance of
     both the preliminary hearing and the hearing on the motion to compel, and the
9    court denied the motion.

10        At Solorzano's preliminary hearing on April 23, 2003, four witnesses
     identified him as the perpetrator of all four charged robberies – the victim of one
11   robbery, a police officer who watched the videotape of another robbery, another
     police officer who watched the videotape of yet another robbery, and yet another
12   police officer who watched the victim of an altogether different robbery identified
     the perpetrator at a field showup. The court held him to answer.

13
     On May 21, 2003, Solozano filed a motion to compel a physical lineup on the
14   grounds that "evidence of eyewitness identification is a material issue" and that
     "there exists a reasonable likelihood of mistaken identification." The prosecutor
15   opposed the motion on the grounds that three of the four witnesses who were
     asked to identify the perpetrator of the four robberies identified Solorzano, that
16   one witness identified Solorzano's truck as the perpetrator's, that security
     cameras at two robberies captured the suspect on videotape, and that there was
17   no likelihood of mistaken identification that a lineup could correct, the court
     denied the motion.

18
          On July 21, 2003, shortly before jury selection at his first trial began,
19   Solorzano moved to preclude the prosecutor from eliciting in-court identifications
     from witnesses on the ground that "the courtroom setting is unduly suggestive"
20   and moved to order the prosecutor to have the witnesses "go through a physical
     lineup at this stage." The court heard argument and denied the motion,
21   characterizing the issue as "res judicata, so to speak," in light of prior rulings on
     like motions and noting that Solozano's counsel "no doubt" could argue the
22   issue to the jury. His counsel objected that the testimony of all four witnesses
     who identified him at trail was unduly suggestive. The court overruled the
23   objections.

24        Shortly before his second trial, Solorzano filed a motion in limine to
     prohibit in-court identifications on the basis of not only his previous motions to
25   conduct timely physical lineup but also the subsequent "unduly suggestive"
     in-court identifications of him as the perpetrator. The court heard argument and
26   denied the motion, noting that his counsel could cross-examine the witnesses
     about their "ample opportunity to see [him] on multiple occasions, multiple
27   hearings, without having to mention an earlier trial."

28        Even if the court had granted a continuance of the hearing on the motion

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to compel a physical lineup as Solorzano requested in his motion of January 2, 2003, the right to a pretrial lineup arises "only when eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve." (Evans v. Superior Court (1974) 11 Cal.3d 617, 625 (Evans); italics added.) The record precludes him from showing the latter. A witness to one robbery identified him as the perpetrator after watching him stand in line, order food from her, grab her arm, demand money, and take money out of her register from about six inches away. The witness positively identified him as the perpetrator in a photo lineup three days later and at trial.

Additionally, a witness to another robbery identified Solorzano as the perpetrator after observing both is face and his pierced lip as he walked into the restaurant, ordered a soda, handed him money and asked for change, and took money from his hand once the register drawer was open. That witness positively identified him as the perpetrator at a field showup later that day and at trial. Finally, a witness to both robberies at which a surveillance camera captured his image on videotape recognized him as a regular customer. The witness positively identified him at trial.

As the court noted, discrepancies that are common to witness descriptions are properly the subject of cross-examination and argument to the jury. Whether the right to a pretrial lineup arises in a particular case is an inquiry that is necessarily "within the broad discretion" of the court. (Evans, supra, 11 Cal.3d at p. 625.) Since the record belies his claim of "a reasonable likelihood of a mistaken identification which a lineup would tend to resolve," Solorzano fails to meet his burden of showing an abuse of discretion. (Ibid.) His constitutional claim likewise fails. (See People v. Sanders (1995) 11 Cal.4th 475, 510, fn. 3.) The question essentially to that claim is whether the court committed an error that rendered his trial so fundamentally lacking in fairness as to violate due process. (Jammal v. Van de Kamp (9th Cir. 1991) 926 F.2d 918, 919-920.) The record answers that question in the negative.

(Lod. Doc. 12, at 6-9.)

In Evans v. Superior Court, 11 Cal. 3d 617, 625, 114 Cal. Rptr. 121, 522 P.2d 681 (1974), the California Supreme Court held that "due process requires in an appropriate case that an accused, upon timely request thereof, be afforded a pretrial lineup in which witnesses to the alleged criminal conduct criminal conduct can participate." The right to a line-up in California arises only when two conditions exist: (1) the eyewitness identification is shown to be in material issue; and (2) there exists a reasonable likelihood of a mistaken identification that a line-up would tend to resolve. Id. at 625. Unlike Evans, the United States Supreme Court has never held that a criminal defendant has a constitutional right to a pretrial lineup. The Ninth Circuit has explicitly rejected any constitutional dimension to a defendant's request for a pretrial lineup. See United States v. Robertson, 606 F.2d 853, 857 (9th Cir. 1979).

1   Instead, the decision to conduct a pretrial line-up is solely within the discretion of the

2   trial judge. Robertson, 606 F.2d at 857. This does not, however, mean that a habeas petitioner

3   cannot make out a cognizable claim for habeas relief based on an unduly suggestive in-court

4   identification. Rather, habeas relief on a claim regarding identification procedures is available

5   if the petitioner can demonstrate that the pretrial or in-court identification procedures were "so

6   impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

7   misidentification." Neil v. Biggers, 409 U.S. 188, 197 (1972); see also Simmons v. United

8   States, 390 U.S. 377, 384 (1968) (stating that witness's identification of criminal defendant

9   may be set aside where there exists "substantial likelihood of irreparable misidentification").

10   Impermissibly suggestive identifications require reversal only if the identification had a

11   substantial and injurious impact on the proceedings or the jury's verdict. See Brecht v.

12   Abrahamson, 507 U.S. at 629.

13   Here, the in court identification procedure was neither unduly suggestive nor lacking

14   reliability. Petitioner committed four robberies between November 28 and December 1, 2002,

15   and as stated in the state court opinion, multiple witnesses identified Petitioner and his vehicle.

16   Petitioner robbed an AM/PM store twice, and the same employee was working each time. The

17   employee identified Petitioner as a regular customer and the suspect. Also videotape of the

18   robberies were provided in evidence. Petitioner also robbed a Teacup Express restaurant and

19   the employee that was robbed consistently identified Petitioner. Petitioner does not challenge

20   these identifications.

21   Petitioner also robbed an Arby's restaurant.  Two employees and a customer witnessed

22   the robbery and were taken to Petitioner's house later that night to attempt to identify

23   Petitioner. The witnesses expressed difficulty in identifying Petitioner as it appeared that

24   Petitioner had shaved at some time between the robbery and the attempted identification.

25   While at first unsure, two of the witnesses later identified Petitioner. The other witness was not

26   able to identify Petitioner, but made a positive identification of Petitioner's truck. At trial,

27   Petitioner had the opportunity to question the three witnesses regarding their difficulty in

28   identifying Petitioner. While the witnesses of the Arby's robbery either did not identify

1   Petitioner or were not confident their initial identification of Petitioner, in light of the substantial

2   corroborating evidence and Petitioner's opportunity to cross-examine the witnesses, the

3   identification was not impermissibly suggestive.

4       In sum, the California Supreme Court's rejection of this claim was not contrary to or an

5   unreasonable application of clearly established federal law. Relief on this ground is precluded

6   by AEDPA.

7       **C.    Claims Three, Six and Seven - Instructional Error**

8       Petitioner sets forth three claims regarding the trial court's instruction under CALCRIM

9   No. 376 (Possession of Recently Stolen Property as Evidence of a Crime). In claim 3,

10  Petitioner asserts that CALCRIM No. 376 erroneously eliminates the corroboration

11  requirement; in claim 6, he asserts the instruction "undermined the presumption of innocence;"

12  and in claim 7, he asserts the instruction "was unsupported by substantial evidence," and the

13  "unconstitutional permissible inference" violated the federal Due Process Clause. (Pet., at 8-9,

14  13-15.)

15      The claims were presented on direct appeal to the Fifth District Court of Appeal. (LD

16  12.) The appellate court denied the claim in a reasoned decision, stating:

17          3. Instruction on Possession of Stolen Property as Evidence of Robbery

18          Solórzano argues that instruction with CALCRIM No. 376 (Possession of
            Recently Stolen Property as Evidence of a Crime) instead of with CALJIC No.
19          2.15 (Possession of Stolen Property) undermined the presumption of innocence
            and violated due process by substituting the requirement of slight supporting
20          evidence for the requirement of slight corroborating evidence and by allowing on
            that basis a permissive inference of the stolen character of the property from his
21          possession of the property. He argues, too, that lack of substantial evidence of
            his possession of stolen property made instruction with CALCRIM No. 376 a
22          violation of due process. The Attorney General argues the contrary.

23          Just hours after Solórzano committed the second of his two videotaped
            robberies, the police arrested him and found $286 in his pockets-seven $20 bills,
24          five $10 bills, sixteen $5 bills, and sixteen $1 bills-"folded or maybe wadded or
            some way" but not in a billfold, a money clip, or a wallet. The clerk at the
25          restaurant testified that usually bills smaller than $20 go into, and larger bills go
            beneath, the restaurant's cash register drawers. The bills he handed Solórzano
26          were in someone else's drawer, not his, and he had no idea if any $20 bills were
            there. Sometimes he puts $20 bills into his drawer and only later puts them
27          beneath his drawer.

28          At the instruction-settling conference, the court noted that the bench

notes to CALCRIM No. 376 require the instruction to be given sua sponte "if there is evidence of possession of stolen property and corroborating evidence of guilt." FN5 The prosecutor argued that Solórzano's way of storing cash in his pockets was consistent with the recently stolen cash from the restaurant. Solórzano's counsel argued that the instruction lacked evidentiary support. The court found the instruction "appropriate" and instructed the jury as follows:

FN5. The Bench Notes to CALCRIM No. 376 cite <u>People v. Clark</u> (1953) 122 Cal.App.2d 342, 346, 265 P.2d 43, and <u>People v. Smith</u> (1950) 98 Cal.App.2d 723, 730, 221 P.2d 140 as authority for that proposition. (Bench Note to CALCRIM No. 376 (2006-2007) p. 168; <u>but see</u> <u>People v. Najera</u> (2006) 135 Cal.App.4th 1125, 1130, 37 Cal.Rptr.3d 844, review granted April 26, 2006, S141654).

"If you conclude that the defendant knew he possessed property and you conclude that the property had, in fact, been recently stolen, you may not convict the defendant of robbery based on those facts alone; however, if you also find that *supporting evidence* tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed the crime of robbery. The *supporting evidence* need only be *slight* and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of robbery.

"Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt.

"I want to reread that last sentence.

"Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt." (CALCRIM No. 376; italics added.)

In argument to the jury, Solórzano's counsel contended that the clerk at one store testified "that all the robber got was ones, fives, and tens. That's what he said, no twenties. I asked him was it twenties? Did you go somewhere else? [¶] He said no, I didn't go into that part of the drawer. All the person got was ones, fives, and tens, because there was no twenties in that area. [¶] That's what he said. That's what he testified to under oath. [The prosecutor] is the advocate of that testimony. [¶] And my client had $20 bills on him. What are we going to say about that, just forget about it? What, did he stop along the way somewhere after the robbery and changed [ sic ] some of the tens for the twenties? Is that what they're telling you? [¶] That's ridiculous. They have proved he didn't do it."

In rebuttal, the prosecutor argued to the jury that according to Solórzano's counsel the clerk at the store "testified that the defendant stole no twenties. [¶] That's not what he said, ladies and gentlemen. You can go through the transcript, check your notes. He said that, in general, they don't put twenties on the top of the drawer, they put them underneath, but I asked him are you saying

there were no twenties in the drawer that were taken out of the drawer and given to him? He said he couldn't say that because it was somebody else's drawer. He doesn't know if there were any twenties. [¶] But that man had 16 $5 bills, five $10 bills, 16 $1 bills, as well as 14 $20 bills-or not 14, but seven $20 bills jammed in his pocket. How did that manage to happen? [¶] We don't know. It's consistent with the robbery. I suppose it's consistent with other things too. But it's not inconsistent with the robbery. [Solórzano's counsel] stood up here and told you that proves he didn't do the robbery. [¶] No, it doesn't, because he stretched on what he told you the evidence said. There's no evidence that no twenties were taken. The evidence is that, in general, they slip the twenties down under the drawer, but [the clerk] told you he wasn't at his own cash register. He doesn't know that for sure. [¶] So what is the explanation as to why $270 is jammed in one of the defendant's pockets and 16 $1 bills in the other? What is the explanation? [¶] One you can make, make up whatever you want. The other is that he took it from the robbery."

CALJIC No. 2.15 (Possession of Stolen Property) instructs on slight *corroborating* evidence instead of on slight *supporting* evidence:

"If you find that a defendant was in [conscious] possession of recently [stolen] [extorted] property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of _____. Before guilt may be inferred, there must be *corroborating evidence* tending to prove defendant's guilt. However, this *corroborating evidence* need only be *slight*, and need not by itself be sufficient to warrant an inference of guilt.

"As corroboration, you may consider [the attributes of possession-time, place and manner,] [that the defendant had an opportunity to commit the crime charged,] [the defendant's conduct,] [[his] [her] false or contradictory statements, if any,] [and] [or] [other statements [he] [she] may have made with reference to the property] [a false account of how [he] [she] acquired possession of the stolen property] [any other evidence which tends to connect the defendant with the crime charged]." (CALJIC No. 2.15; italics added.)

Solórzano argues that the absence from CALCRIM No. 376 of the requirement in CALJIC No. 2.15 of slight *corroborating* evidence makes the former instruction constitutionally defective. We disagree. First, a respected dictionary's list of synonyms including the word "corroborate" notes: "*Corroborate* refers to *supporting* something by means of strengthening evidence: The witness is expected to corroborate the plaintiff's testimony." (American Heritage Dict. (4th ed.2000) p. 386; italics added; italics deleted.) Since the CALJIC No. 2.15 references to "corroborating evidence" and the CALCRIM No. 376 references to "supporting evidence" are synonymous, neither instruction permits the jury to find the defendant guilty of robbery solely on the basis of possession of stolen property. Both instructions- CALJIC No. 2.15 by the requirement of slight *corroborating* evidence and CALCRIM No. 376 by the requirement of slight *supporting* evidence-prohibit the jury from finding him guilty on the basis of that fact alone.

Second, the inference that possession of stolen property creates is permissive, not mandatory. The case law is settled that requiring only slight corroborating evidence in support of a permissive inference, like the one that possession of stolen property creates, neither changes the prosecution's burden of proving every element of the offense nor otherwise violates the right to due process if, as here, the conclusion suggested is one that common sense and

1    reason can justify "in light of the proven facts before the jury." (People v. Snyder
2    (2003) 112 Cal.App.4th 1200, 1226, 5 Cal.Rptr.3d 711 (Snyder), citing, e.g.,
     Francis v. Franklin (1985) 471 U.S. 307, 314-315, 105 S.Ct. 1965, 85 L.Ed.2d
3    344, and People v. Holt (1997) 15 Cal.4th 619, 677, 63 Cal.Rptr.2d 782, 937
     P.2d 213.)

4        The permissive inference that CALCRIM No. 376 authorizes if the jury
5    finds slight supporting evidence is linguistically synonymous with, and
     constitutionally indistinguishable from, the permissive inference that CALJIC No.
6    2.15 authorizes if the jury finds slight corroborating evidence. CALJIC No. 2.15
     has withstood repeated constitutional attack. (People v. Yeoman (2003) 31
7    Cal.4th 93, 130-132, 2 Cal.Rptr.3d 186, 72 P.3d 1166; Snyder, supra, at p.
     1226, 5 Cal.Rptr.3d 711, citing, e.g., People v. Mendoza (2000) 24 Cal.4th 130,
8    176-177, 99 Cal.Rptr.2d 485, 6 P.3d 150.) Like CALJIC No. 2.15, CALCRIM No.
     376 neither undermines the presumption of innocence nor violates due process.

9        Finally, we turn to Solórzano's argument that lack of substantial evidence
10   of his possession of stolen property made instruction with CALCRIM No. 376 a
     violation of due process. Besides the cash the police found in his pockets just
11   hours after the robbery, the record shows that a customer who pursued the
     perpetrator from the restaurant but lost him in traffic positively identified as the
12   getaway vehicle the "old" and "beat up" truck with "rust spots or something
     behind some of the wheels" parked outside Solórzano's house. The evidentiary
13   context of the cash in his pockets includes flight, which tends to show
     consciousness of guilt (People v. Scott (1924) 66 Cal.App. 200, 203, 225 P.
14   767), "attributes of possession" like " 'time, place, and manner,' " which tend to
     show guilt (People v. Anderson (1989) 210 Cal.App.3d 414, 424, 258 Cal.Rptr.
15   482), and "the opportunity to commit the crime" (id. at p. 425, 258 Cal.Rptr. 482).
     His argument is meritless.

16   (LD 12, at 9-14.)

17       Petitioner then filed for review with the California Supreme Court. Both petitions were

18   summarily denied. (LD 13.) The California Supreme Court is presumed to have denied the

19   claim for the same reasons stated in the courts below. Ylst, 501 U.S. at 803.

20       Insofar as Petitioner is claiming instructional error under state law, state law error in

21   itself does not support a claim for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 68,

22   (1991); Dugger v. Adams, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state

23   law does not of itself establish that a claim was available under the United States

24   Constitution.") Rather, "in conducting habeas review, a federal court is limited to deciding

25   whether a conviction violated the Constitution, laws or treaties of the United States." Estelle,

26   502 U.S. at 68; see also 28 U.S.C. § 2254(a). A faulty jury instruction will constitute a violation

27   of due process only when the instruction by itself so infected the entire trial that the resulting

28   conviction violates due process. Middleton v. McNeil, 541 U.S. 433, 437 (2004); Estelle, 502

1   U.S. at 71-72. The instruction must be more than merely erroneous; Petitioner must show

2   there was a "'reasonable likelihood that the jury has applied the challenged instruction in a way

3   that violates the Constitution.'" Middleton, 541 U.S. at 437 (citations omitted); Cupp v.

4   Naughten, 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a conviction

5   resulting from a state trial in which [an allegedly faulty] instruction was used, it must be

6   established not merely that the instruction is undesirable, erroneous or even 'universally

7   condemned,' but that it violated some right which was guaranteed to the defendant by the

8   Fourteenth Amendment."). Further, "[i]t is well established that the instruction 'may not be

9   judged in artificial isolation,' but must be considered in the context of the instructions as a

10  whole and the trial record." Estelle, 502 U.S. at 72 (citation omitted); Cupp, 414 U.S. at 147.

11  Finally, habeas relief is not available unless the alleged instructional error had a substantial

12  and injurious effect or influence in determining the jury's verdict. Calderon v. Coleman, 525

13  U.S. 141, 147 (1998) (applying Brecht, 507 U.S. at 637 (1993)).

14       As stated in Estelle, jury instructions "'may not be judged in artificial isolation,' but must

15  be considered in context of the instructions as a whole and the trial record." 502 U.S. at 72.

16  Here, the jury was given complete, clearly stated, jury instructions on the reasonable doubt

17  standard and the elements required to convict Petitioner. (RT at 1044-74.) As described in the

18  state court decision, the trial court repeated the statement of the reasonable doubt standard

19  when providing CALCRIM No. 376.

20       The court of appeal's reading of CALCRIM No. 376 was reasonable. CALCRIM No. 376

21  does not change the burden for conviction when viewed in light of the greater jury instruction

22  framework; rather, it states that mere possession of property that the jury has concluded to be

23  stolen is not sufficient for conviction. As there appears to have been no error in the use of

24  CALCRIM No. 376, it cannot have "so infected the entire trial that the resulting conviction

25  violates due process." Middleton, 541 U.S. at 437; Estelle, 502 U.S. at 71-72.

26       Petitioner presents three separate claims based on CALCRIM No. 376. In claim three,

27  Petitioner asserts that the instruction eliminates the corroboration requirement for the

28  inference of guilt based on possession of recently stolen property. More specifically, Petitioner

claims that the stolen property does not corroborate the Arby's robbery as the money found in his pockets the night of the robbery contained twenty dollar bills when twenty dollar bills were not normally kept in the cash drawer. The jury considered the factual contention raised by Petitioner, and found him guilty despite the attempt to show the property was not stolen. The instruction was stated conditionally, and did not require the jury to consider the money as recently stolen property. The jury instruction did not so infect the entire trial as to violate Petitioner's due process. Petitioner's third claim lacks merit.

Petitioner's sixth claim is that the jury instruction undermines the presumption of innocence and the reasonable doubt standard. The jury instruction explicitly states otherwise. It pointedly explains that the offense must be proven beyond a reasonable doubt. To emphasize the relevant standard, the trial court repeated the section of the jury instruction discussing the reasonable doubt standard. Accordingly, Petitioner's sixth claim lacks merit.

Finally, in Petitioner's seventh claim, he asserts that there was not substantial evidence that the money was stolen to provide the jury instruction. Petitioner and his vehicle was identified shortly after the Arby's robbery, and the money was found on his person. Petitioner's argument is without merit, and fails to implicate a violation of federal law.

The state court's decision, upholding the trial court's use of CALCRIM No. 376, was not contrary to or an unreasonable application of clearly established Supreme Court law. Accordingly, habeas relief is not available for Petitioner's third, sixth and seventh claims.

**D.    Claim Four - Instructional Error**

Petitioner argues that the trial court's instruction under CALCRIM No. 318 (Prior Statements as Evidence) "erroneously permit[ed] the jury to consider prior statements of a witness as substantial evidence without requiring the jury to find inconsistency." (Pet. at 8.)

The claim was presented on direct appeal to the Fifth District Court of Appeal. (LD 12.) The appellate court denied the claim in a reasoned decision, stating:

> 4. Instruction on Prior Statements as Evidence

> Solórzano argues that instruction with CALCRIM No. 318 (Prior Statements as Evidence) instead of with CALJIC No. 2.13 (Prior Consistent or Inconsistent Statements as Evidence) violated due process by authorizing the

jury to consider a witness's prior statements as substantive evidence without finding those statements inconsistent with his or her testimony. The Attorney General argues that Solórzano forfeited his right to appellate review by failing to make a timely objection and that the instruction was proper.

On direct examination, both of Solórzano's parents testified to where he was around the time of the robbery. His father testified that his son went to a swap meet around 11:00 a.m. to look for a truck and was at home again by around 2:15 or 2:30 p.m. His mother testified that her son was home from around 2:00 p.m. to around 4:00 or 5:00 p.m. when the police arrived. On cross-examination, both parents denied telling the police where their son was that afternoon and, additionally, his father testified that he did not remember telling the police about that. On rebuttal, a police officer testified that he asked where Solórzano was and that both of his parents told him he had gone to the swap meet around 11:00 a.m. to look for a truck, had returned home around 2:00 p.m., had gone out again around 3:00 or 3:30 p.m. "to go get some papers fixed on the truck," and had returned home again around 4:30 p.m.

At the instruction-settling conference, the court read and then asked counsel for comment about CALCRIM No. 318. "I think that's appropriate," the prosecutor replied. Solórzano's counsel answered, "That's fine, Judge." The court instructed the jury as follows:

> "You have heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways: First, to evaluate whether the witness's testimony in court is believable; and, two, as evidence that the information in those earlier statements is true." (CALCRIM No. 318.)

In argument to the jury, the prosecutor suggested that Solórzano's parents no longer remember the details about the day of the robbery. "When would their memory have been the best? Probably that day." He pointedly did not accuse them of lying but merely suggested, "Maybe they were looking through their hearts instead of their eyes. Maybe they were remembering back in ways to help their relative instead of the ways they remembered at the time, which they didn't know at the time helped proved his guilt."

In his argument, Solórzano's counsel chose to tell the jury essentially "the same thing [the prosecutor] does." "You're talking about good, honest people, God-fearing people. They're not going to come in here and take the oath and lie to you." Instead, he argued "that the police are obviously mixing things up" since they were "interviewing people fast and furious." In rebuttal, the prosecutor argued, "none of the alibi evidence is real alibi evidence. It's the familial affection of a family that you may have a great deal of respect for, but they can't say he wasn't the robber."

During deliberations, the jury requested a copy of the officer's police report and a readback of his testimony. The court granted the readback request but, since the police report was not in evidence, denied that request.

Preliminarily, we turn to the Attorney General's forfeiture argument. Applying the established rule that allows appellate review, even in the absence of an objection, of any instruction affecting the substantial rights of the accused, we reject his argument. (§ 1259; People v. Brown (2003) 31 Cal.4th 518, 539,

1   fn. 7, 3 Cal.Rptr.3d 145, 73 P.3d 1137.) So we turn to the merits of the
    CALCRIM No. 318 issue.
2

3           Solórzano argues that CALJIC No. 2.13 (Prior Consistent or Inconsistent
    Statements as Evidence) "provide[s] the jury with proper guidance as to the use
    of prior consistent or inconsistent statements as evidence":
4

5           "Evidence that at some other time a witness made a [statement]
            [or] [statements] that [is] [or] [are] *inconsistent* [ *or consistent* ] with
6           [his] [her] testimony in this trial, may be considered by you not only
            for the purpose of testing the credibility of the witness, but also as
            evidence of the truth of the facts as stated by the witness on that
7           former occasion.

8           "[If you disbelieve a witness' testimony that [he] [she] no longer
            remembers a certain event, that testimony is *inconsistent* with a
9           prior statement or statements by [him] [her] describing that event.]"
            (CALJIC No. 2.13; italics added.)
10

11          "Unlike CALJIC No. 2.13," Solórzano argues, "CALCRIM No. 318 fails to
    inform the jury that a prior statement can be considered as evidence only if it is
12  found to be inconsistent with trial testimony." "To the extent that CALCRIM No.
    318 deviates from CALJIC No. 2.13 by denying the defendant the same jury
13  determination on the issue of inconsistency," he claims, "it must be deemed
    erroneous." For two reasons, we reject his argument.
14
            First, Solórzano's argument intimates that CALJIC instructions serve as
15  the benchmark by which to adjudicate the correctness of CALCRIM instructions.
    He is mistaken. "The California Judicial Council withdrew its endorsement of the
16  long used CALJIC instructions and adopted the new CALCRIM instructions,
    effective January 1, 2006. At the time of [his] trial, former rule 855(e) of the
17  California Rules of Court (now renumbered rule 2.1050) provided that '[u]se of
    the Judicial Council instructions is strongly encouraged.'" (People v. Thomas
18  (2007) 150 Cal.App.4th 461, 465, 58 Cal.Rptr.3d 581.)

19          Second, Solórzano's argument betrays an incorrect reading of CALJIC
    No. 2.13, which straightforwardly allows the jury to use prior statements as
20  substantive evidence without finding those statements inconsistent with his or
    her testimony (as does CALCRIM No. 318) and which optionally characterizes
21  as inconsistent a witness's testimony that he or she "no longer remembers a
    certain event" if the jury disbelieves that testimony. (CALJIC No. 2.13.) Since
22  both of Solórzano's parents denied telling the police where their son was on the
    afternoon of the robbery, the optional characterization is surplusage, as is his
23  father's additional testimony that he did not remember telling the police about
    that.

24  (LD 12, at 14-17.)

25          Petitioner then filed for review with the California Supreme Court. Both petitions were

26  summarily denied. (LD 13.) The California Supreme Court is presumed to have denied the

27  claim for the same reasons stated in the courts below.  Ylst, 501 U.S. at 803.

28          Petitioner argues that the jury instruction creates a mandatary presumption that

1 statements made in the earlier made statements are true. (Traverse at 28.) Petitioner's

2 contention is refuted by the actual language of the jury instruction that allows the jury to

3 determine if the witness made the statements, and if the witness did, whether the statements

4 are true or affect the witness's credibility. See CALCRIM No. 318. Accordingly, Petitioner's

5 contention is incorrect. Moreover, the jury instruction does not violate clearly established

6 Supreme Court authority.

7 A jury instruction that reduces the level of proof necessary for the government to carry

8 its burden "is plainly inconsistent with the constitutionally rooted presumption of innocence."

9 Cool v. United States, 409 U.S. 100, 104 (1972). "All challenged instructions[, however,] must

10 be considered in light of all of the jury instructions and the trial record as a whole." Mendez v.

11 Knowles, 556 F.3d 757, 768 (9th Cir. 2009) (citing Cupp, 414 U.S. at 146-47.).

12 The finding by the California Court of Appeal that CALCRIM No. 318 did not violate

13 Petitioner's constitutional rights was not an unreasonable application of clearly established

14 Supreme Court authority. As noted by the state appellate court, CALCRIM No. 318 does not

15 compel the jury to accept out-of-court statements as true. The instruction tells the jury that it

16 may use out-of-court statements to evaluate the credibility of a witnesses's in-court testimony

17 and as evidence that the information in those earlier statements is true. CALCRIM No. 318

18 does not, as argued by Petitioner, create a presumption of truthfulness of the out-of-court

19 statements compared to trial testimony. For these reasons. CALCRIM No. 318 did not reduce

20 the level of proof necessary for the government to carry its burden.

21 Accordingly, Petitioner's fourth claim should be denied.

22 **VI.   CONCLUSION**

23 Claims 9 through 14 of the petition are DISMISSED without prejudice as unexhausted.

24 Claims 1 through 4, 6, and 7 are DENIED.  Petitioner's claims 5 and 8 are DENIED based as

25 voluntarly withdrawn by Petitioner. The Court therefore orders that the petition be DENIED.

26 **VII.   CERTIFICATE OF APPEALABILITY**

27 A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal

28 a district court's denial of his petition, and an appeal is only allowed in certain circumstances.

1   Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining

2   whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

3       (a) In a habeas corpus proceeding or a proceeding under section 2255 before
        a district judge, the final order shall be subject to review, on appeal, by the court
4       of appeals for the circuit in which the proceeding is held.

5       (b) There shall be no right of appeal from a final order in a proceeding to test the
        validity of a warrant to remove to another district or place for commitment or trial
6       a person charged with a criminal offense against the United States, or to test the
        validity of such person's detention pending removal proceedings.

7
        (a)     (1) Unless a circuit justice or judge issues a certificate of appealability, an
8               appeal may not be taken to the court of appeals from–

9                       (A) the final order in a habeas corpus proceeding in
                        which the detention complained of arises out of
10                      process issued by a State court; or

11                      (B) the final order in a proceeding under section
                        2255.
12
                (2) A certificate of appealability may issue under paragraph (1)
13              only if the applicant has made a substantial showing of the denial
                of a constitutional right.
14
                (3) The certificate of appealability under paragraph (1) shall
15              indicate which specific issue or issues satisfy the showing required
                by paragraph (2).
16
17          If a court denies a petitioner's petition, the court may only issue a certificate of

18   appealability "if jurists of reason could disagree with the district court's resolution of his

19   constitutional claims or that jurists could conclude the issues presented are adequate to

20   deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529

21   U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he

22   must demonstrate "something more than the absence of frivolity or the existence of mere good

23   faith on his . . . part." Miller-El, 537 U.S. at 338.

24          In the present case, the Court finds that no reasonable jurist would find the Court's

25   determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable,

26   nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.

27   Petitioner has not made the required substantial showing of the denial of a constitutional right.

28   Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

1

## ORDER

2    Accordingly, IT IS HEREBY ORDERED:

3    1) Claims 1-8 of the petition for writ of habeas corpus are DENIED;

4    2) Claims 9-14 of the petition for writ of habeas corpus are DISMISSED without

5    prejudice as unexhausted;

6    3) The Clerk of Court is DIRECTED to enter judgment and close the case; and

7    4) The Court DECLINES to issue a certificate of appealability.

8

9

10   IT IS SO ORDERED.

11   Dated:    March 29, 2012                    /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. District Court
E. D. California